IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN AYERS, | ) | CASE NO. 1:18CV1554 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DAVE MARQUIS, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Adrian Ayers, ("Petitioner" or "Ayers") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Ayers is detained at the Richland Correctional Institution,

having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of 11

counts of money laundering, 10 counts of telecommunications fraud, 3 counts of theft, 1 count of

misuse of credit cards, 1 count of forgery, and 3 counts of identity fraud.  *State v. Ayers*, Case

No. CR-16-607500-A (Cuyahoga Cty. Common Pleas Ct., filed November 2, 2016).  At

sentencing, the trial court merged the applicable counts and sentenced Ayers to seven years in

prison for identity fraud and 24 months for money laundering, to be run consecutively, and 12

months for misuse of a credit card, to be run concurrently, for a total of 9 years in prison.  Doc.

6-1, pp. 28-29.

On July 9, 2018, Ayers filed a Petition for Writ of Habeas Corpus setting forth two

grounds for relief.  Doc. 1.  He also filed a Motion for Partial Summary Judgment as to Ground

One (Doc. 5), a Motion to Compel the Production of Documents (Doc. 16), and a Motion for

Leave to Supplement his Petition (Doc. 21).  This matter has been referred to the undersigned

Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth

more fully below, Ground One is not cognizable and Ground Two is procedurally defaulted.

Thus, the undersigned recommends that Ayers' Petition for Writ of Habeas Corpus be

1

**DISMISSED**.  His Motion for Partial Summary Judgment and his Motion to Supplement

Petition should be **DENIED**.  His Motion to Compel the Production of Documents (Doc. 16) is

**DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:

> {¶ 1} Defendant-appellant Adrian Ayers and a codefendant, Quintard Brown, engaged in
> a scheme where Brown made in-store credit card applications by using a fraudulent
> driver's license, used those credit cards to buy thousands of dollars of merchandise, and
> then sold the merchandise to Ayers at a huge discount. Ayers's actions caused a jury to
> find him guilty of 11 counts of money laundering; 10 counts of telecommunications
> fraud; theft; misuse of credit cards; and 3 counts of identity fraud.
>
> \*       \*       \*
>
> {¶ 4} The state's evidence showed that an elderly man (some of the counts contained an
> elderly person specification) discovered that several retail merchants issued credit cards
> in his name based on in-store applications that were not made by him. Those applications
> were made by Brown, who used a driver's license that contained the elderly man's name
> and address, but Brown's photograph and vital statistics. Ayers did not dispute that he
> was present when the fraudulent credit card applications and subsequent purchases were
> made over four successive days—security video showed Ayers leaving some of the stores
> with merchandise that had been purchased with the fraudulently obtained credit cards,
> and cell phone tracking data placed him "in the vicinity" where other credit card
> applications and sales transactions occurred. Those stores were located throughout the
> county.
>
> {¶ 5} The driver's license that Brown used when applying for credit listed a driver's
> license number that belonged to a person who was a customer of Ayers's business.
> During the course of their investigation, the police drove past Ayers's place of business
> and, on "numerous occasions," saw a car belonging to the person whose driver's license
> number had been used on the fraudulent driver's license.

2

*State v. Ayers*, 2017 WL 3084815, at *1 (Oh. Ct. App. July 20, 2017).

### A. Trial Court

On June 30, 2016, a Cuyahoga County, Ohio grand jury indicted Ayers on ten felony telecommunications fraud charges, R.C. 2913.05(A), fifteen third-degree felony money laundering charges, R.C. 1315.55(A)(3), eight first-degree misdemeanor theft/petty theft charges, R.C. 2913.02(A)(1), three fifth-degree felony theft charges, R.C. 2913.02(A)(1), one fourth-degree felony misuse of credit cards charge, R.C. 2913.21(B)(2), five fifth-degree felony forgery charges, R.C. 2913.31(A)(3), one second-degree felony identity fraud charge with an elderly victim specification, R.C. 2913.49(B)(1), one second-degree felony identity fraud charge with an elderly victim specification, R.C. 2913.49(B)(2), and one second-degree felony identity fraud charge with an elderly victim specification, R.C. 2913.49(C). Doc. 6-1, pp. 4-24.

Prior to trial, upon the state's motion, the trial court dismissed the misdemeanor theft charges, four money laundering charges, and four forgery charges. Doc. 6-1, p. 27; Doc. 6-2, p. 22. The case proceeded to trial and Ayers made oral Ohio Crim.R. 29 motions for acquittal after the state rested its case and after the defense rested, which the trial court denied. Doc. 6-1, p. 26. The jury found Ayers guilty of ten telecommunications fraud charges, eleven money laundering charges, three fifth-degree felony theft charges, one misuse of credit cards charge, one forgery charge, and three identity fraud with elderly victim specification charges. Doc. 6-1, p. 27. The trial court merged the applicable counts and sentenced Ayers to seven years in prison for identity fraud and 24 months for money laundering, to be run consecutively, and 12 months for misuse of a credit card, to be run concurrently, for a total of 9 years in prison. Doc. 6-1, pp. 28-29.

### B. Direct Appeal

On December 2, 2016, Ayers, through counsel, appealed to the Ohio Court of Appeals. Doc. 6-1, p. 31. In his brief, he raised the following assignment of error:

> The jury erred convicting Adrian Ayers since the conviction was against the manifest weight of the evidence and it lacked sufficiency.

Doc. 6-1, p. 40.  On July 20, 2017, the Ohio Court of Appeals affirmed Ayers' convictions and sentences.  Doc. 6-1, pp. 64-70.  Ayers did not file an appeal.

### C.  Ohio App.R. 26(B) Application to Reopen

On October 10, 2017, Ayers, pro se, filed a motion for leave to file a delayed App.R. 26(B) Application with the Ohio Court of Appeals.  Doc. 6-1, pp. 71, 142.  On October 13, 2017, the Ohio Court of Appeals informed Ayers that a timely Rule 26(B) Application was due by October 18, 2017, and that if he did not file his application by that date, he must show "good cause' for filing an untimely application.  Doc. 6-1, p. 76.

On November 27, 2017, Ayers, pro se, filed a Rule 26(B) Application and an amended Rule 26(B) Application.  Doc. 6-1, pp. 77, 85.  He alleged appellate counsel was ineffective for failing to raise these claims on direct appeal:

> 1. Whether the lower court erred when it sentenced Appellant to consecutive sentences when counts were allied.
>
> 2. Whether Appellant rights under the Double Jeopardy Clause were violated based on the [illegible] violation of the [illegible] of limitation.

Doc. 6-1, pp. 86-87.  Ayers asked the Ohio Court of Appeals to appoint him legal counsel (Doc. 6-1, p. 90), which the court denied (Doc. 6-1, p. 91).  Ayers filed a motion to amend his Rule 26(B) Application to add a claim that his appellate counsel was unconstitutionally ineffective for failing to raise this claim on direct appeal:

> Whether it was error to use loss amounts from counts that were dismissed for violation of the statute of limitation clause.

Doc. 6-1, pp. 112-116.  Ayers filed another motion for appointment of counsel (Doc. 6-1, p. 117), which the court denied (Doc. 6-1, p. 121).  On January 26, 2018, the Ohio Court of Appeals determined that Ayers' Rule 26(B) Application was untimely, that he did not establish

4

good cause to excuse his untimely filing, and it denied his Rule 26(B) Application and his

motion to amend his Application.  Doc. 6-1, pp. 122-128.

On January 31, 2018, Ayers filed exhibits in support of his Rule 26(B) Application.  Doc.

6-1, p. 129.  On February 14, 2018, he filed a petition for rehearing and rehearing en banc.  Doc.

6-1, pp. 141-148.  On February 20, 2018, the Ohio Court of Appeals dismissed Ayers' petition

for rehearing en banc as untimely and for failing to comply with Loc.App.R. 26(C)(1).  Doc. 6-1,

p. 149.  On February 21, 2018, the Ohio Court of Appeals denied Ayers' amended application

for reopening again.  Doc. 6-1, p. 150.

On March 9, 2018, Ayers, pro se, appealed the Ohio Court of Appeals' January 26 and

February 20, 2018 decisions to the Ohio Supreme Court.  Doc. 6-1, p. 151-152.  In his

jurisdictional memorandum, he raised the following proposition of law:

> Under the U.S. Constitution, Ohio Constitution, the Bill of Rights and the Fourteenth
> Amendment notice and hearing is mandatory.

Doc. 6-1, p. 155.  On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of

his appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 6-1, p. 176.

### D. Federal Habeas Petition

On July 9, 2018, Ayers, pro se, filed a federal habeas petition pursuant to 28 U.S.C.

§2254.  Doc. 1.  He listed the following grounds for relief:

> **Ground One**: Notice received 25 days after filing deadline violated Petitioner's due
> process rights to fair notice.

> **Ground Two**: Evidence was constitutionally insufficient to support the jury's verdict as
> to Counts 14, 15, 16, 17, 18, 19, 20, 21, 22 and 27.

Doc. 1, pp. 5-7.  On September 18, 2018, Respondent filed a Return of Writ.  Doc. 6.  Ayers

filed a Traverse.  Doc. 19.  Also pending are Ayers' Motion for Partial Summary Judgment on

Ground One (Doc. 5) Motion to Compel the Production of Documents (Doc. 16), and Motion for

Leave to Supplement Petition (Doc. 21).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas

petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is

procedurally defaulted." *Id.* While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.** In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or

reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of

the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002);

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the

petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary

to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey*

*v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of

law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's

determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded

jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also*

*Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A. Ground One is not cognizable

In Ground One, Ayers argues that the notice the Ohio Court of Appeals sent him with

respect to his Rule 26(B) Application was received by him 25 days after the filing deadline and

that this violated his due process rights to fair notice. Doc. 1, pp. 5, 11. However, challenges to

errors in state post-conviction proceedings are not cognizable on federal habeas review. *Cress v.*

*Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("the Sixth Circuit has consistently held that errors in

post-conviction proceedings are outside the scope of federal habeas corpus review," citing *Kirby*

*v. Dutton*, 794 F.2d 245, 246-247 (6th Cir. 1986)); *Lopez v. Wilson*, 426 F.3d 339, 342-352 (6th

Cir. 2005) (A Rule 26(B) Application to Reopen is part of Ohio's collateral review process, not the direct appeal); *Morgan v. Eads*, 818 N.E.2d 1157 (Ohio 2000); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 331 F.Supp.2d 605, 622 (N.D.Ohio 2004).  Accordingly, Ayers' claim that the Ohio Court of Appeals' untimely notice in response to his Rule 26(B) Application violated his due process rights is not cognizable on federal habeas review.  Ayers' reliance upon *Stone v. Powell*, 428 U.S. 465 (1976) (Doc. 19-1, pp. 3, 6) is unavailing because he is not alleging that the state courts denied him a vehicle for presenting a Fourth Amendment claim.

In his traverse, Ayers claims that Respondent misrepresented the facts when it set forth the Ohio Court of Appeals' decision.  Doc. 19-1, p. 2.  However, Respondent correctly set forth the facts as stated by the Ohio Court of Appeals.  See Doc. 6, p. 19; *State v. Ayers*, 2018 WL 655673, at *1 (Oh. Ct. App. Jan. 26, 2018).  Second, although Ayers claims that he did not, as the Ohio Court of Appeals stated, argue that his appellate counsel failed to provide him with notice (Doc. 19-1, p. 2), he did, in fact, argue that his appellate counsel failed to provide him with notice.  See Doc. 6-1, pp. 78 (Rule 26(B) Application for reopening filed November 27, 2017), 83 (Ayers' affidavit stating that his attorney had not informed his as to the status of his appeal).  Regardless, the fact remains that Ground One challenges the subsequent notice sent by the Ohio Court of Appeals and it is not cognizable.  *Cress*, 484 F.3dat 853; *Lopez*, 426 F.3d at 352.

### B. Ground Two is procedurally defaulted

In Ground Two, Ayers argues that there was insufficient evidence at trial to support his convictions on counts 14-22 and 27 (four counts of telecommunications fraud, four counts of money laundering, one count of theft, and one count of misuse of credit cards).  Doc. 1, p. 17; Doc. 6-1, p. 28.  He states that these counts relate to illegal transactions made at Kay Jewelers and J.C. Penney and that there was no evidence presented by the state that he was involved in

these transactions.  Doc. 1, p. 17 ("but most of all, there was <u>no</u> cellphone tracking evidence which tied Petitioner to the other stores mentioned herein.").  He admits that evidence showed that he was present at Target, Kmart, Toys "R" Us, and Best Buy.  Doc. 19-1, p. 13.

Ground Two is procedurally defaulted, as Ayers concedes (Doc. 19-1, p. 8).  Although Ayers raised a sufficiency of the evidence claim on direct appeal, he did not appeal to the Ohio Supreme Court; thus, he did not pursue this claim through the state's ordinary appellate review procedures.  *See Williams*, 460 F.3d at 806.  To overcome the procedural bar, Ayers must show cause for the default and actual prejudice that resulted from the alleged violation of federal law.  For cause, Ayers alleges ineffective assistance of counsel during his appeal to the Ohio Court of Appeals.  Doc. 19-1, pp. 9-10.  But that is not the point at which Ayers procedurally defaulted his claim; Ayers procedurally defaulted his claim because he did not file an appeal with the Ohio Supreme Court after the Ohio Court of Appeals denied his appeal.  A defendant has no right to counsel for a discretionary appeal to the Ohio Supreme Court; thus, ineffective assistance of counsel cannot serve as cause to excuse his procedural default.

To the extent Ayers contends that his appellate counsel did not inform him of the status of his appeal such that he could not timely appeal to the Ohio Supreme Court (Doc. 19-1, pp. 10-11), even if this allegation could be taken as cause to excuse his procedural default, Ayers does not show that he was prejudiced.  Despite his assertion that the state presented no evidence that he accompanied Brown to Kay Jewelers and J.C. Penney, not even cell phone tracking data, the trial transcript shows that the state did in fact present cell phone tracking data with respect to Kay Jewelers and J.C. Penney.  See Doc. 6-2, pp. 324-330, 332-333.  Although Ayers claims that there was no evidence the cell phone number belonged to him, evidence was presented at trial that the cell phone number belonged to him.  See Doc. 6-2, pp. 294, 313-314, 359-361.  Ayers asserts that the state farcically alleged that he called his mother from the cell phone but that his

mother is deceased (Doc. 19-1, p. 13); but the evidence the state presented was that the phone

number called the landline of the house that was linked to his mother's name (Doc. 6-2, p. 314).

Despite no eyewitness testimony placing Ayers at Kay Jewelers and J.C. Penney, there was

testimony and/or video placing him at the other stores and cell phone records placed him at all

the stores.  The fact that Kay Jewelers and J.C. Penney did not have video recordings (Doc. 6-2,

p. 310) does not mean that there was no evidence linking him to purchases at those stores.  And,

as the Ohio Court of Appeals explained,

> {¶ 6} When reviewing a claim that there is insufficient evidence to support a conviction, we not only view the evidence most favorably to the state, but draw all reasonable inferences in the state's favor. *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 138. The circumstantial evidence was enough to allow the jury to infer that Ayers was an active participant in Brown's scheme. Ayers claimed to have met Brown on the first day that they traveled together to buy merchandise, but that claim was undercut by evidence that the person whose driver's license number was listed on the fraudulent driver's license appeared to have some relationship with Ayers. And the jury could reject Ayers's assertion that he was an unwitting participant of Brown's fraud. The crimes occurred over a four-day period in which Ayers admitted that he personally selected, and Brown purchased using in-store credit, over $7,000 in merchandise at different stores located throughout the county. All the while, Ayers was, by his own admission, paying half price for items that Brown purchased. This evidence was circumstantial, but enough to allow a rational trier of fact to conclude that Ayers was complicit. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

> {¶ 7} We likewise reject Ayers's claim that the guilty verdicts are against the manifest weight of the evidence.

> {¶ 8} Ayers testified that Brown, whom he had never before met, walked off the street into Ayers's place of business and said that he "could get me some stuff half price." According to Ayers, Brown was going through a divorce and was "running his credit cards up so he can get some money for somewhere to stay." Brown's plan was to purchase merchandise by credit and then sell it to Ayers for cash at half price.

> {¶ 9} Ayers's evidence required the jury to believe that it was fortuity that a total stranger would approach him with an offer to buy new store merchandise at half price. When asked why he would agree to such a proposition, Ayers testified that "people come to my shop with all kind of stuff" to sell. But Ayers never explained why he would abandon his business to leave with Brown and go shopping for four successive days, in locations throughout the county. In addition, Ayers's claim that Brown tried to raise needed money by opening charge accounts, purchasing items, and then selling the purchased merchandise for half its retail value was so far-fetched that the jury was entitled to give it

no credence at all. And having testified in his own defense, Ayers failed to offer any evidence that he actually paid Brown for the merchandise. This truly was a case of "too good to be true" and the jury could reject Ayers's testimony on that basis. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (the weight of the evidence and credibility of witnesses are matters primarily for the finder of fact).

*Ayers*, 2017 WL 3084815, at * 2.  In short, Ayers does not show actual prejudice to overcome his procedural default.

Finally, Ayers does not show a fundamental miscarriage of justice if his claim is not considered, *Coleman*, 501 U.S. at 750, because to do so he must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).  Ayers has no such evidence.  Ground Two is procedurally defaulted.

## C. Ayers' Motion for Partial Summary Judgment should be denied

Ayers filed a Motion for Partial Summary Judgment as to Ground One.  Doc. 5.  He reiterates his assertion that he was not provided timely notice by the Ohio Court of Appeals with respect to his initial Rule 26(B) Application.  However, as explained above, Ground One is not cognizable because it does not describe a wrong that can be remedied by federal habeas relief. Accordingly, Ayers' motion for partial summary judgment should be denied.

## D. Ayers' Motion to Compel the Production of Documents is denied

Ayers filed a Motion to Compel the Production of Documents pursuant to Rule 6 of the Rules Governing Section 2254 cases.  Doc. 16.  He requests documents that were admitted at trial, including cell phone records and tracking data, maps, and a police report.  Doc. 16.

"Habeas petitioners have no right to automatic discovery.  A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6[(a) of the Rules Governing Section 2254 Cases]."  *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997); *Byrd v. Collins*, 209 F.3d 486, 515–16 (6th Cir. 2000)).  A court may provide discovery when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief.'"  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy*, 520 U.S. at 908–909).  A petitioner must articulate specific allegations of fact; "Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations."  *Id*. (internal quotation marks and citation omitted).  The burden is on the moving party to demonstrate "the materiality of the information requested."  *Id*.

Here, Ayers does not show that, if he obtains records that were admitted at trial, he could demonstrate that he is entitled to relief.  *Williams*, 380 F.3d at 974.  His first ground for relief is not cognizable and his second ground is procedurally defaulted.  The evidence he seeks is not new evidence that could be used to show actual innocence.  He does not provide "specific allegations before the court [to] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief."  *Bracy*, 520 U.S. at 908-909, quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  Ayers' motion to compel the production of documents is denied.

### E. Ayers' Motion for Leave to Supplement Petition should be denied

More than three months after filing his traverse, Ayers filed a Motion for Leave to Supplement Petition.  Doc. 21.  He asserts that he has newly discovered evidence of actual innocence as to the charges against him regarding Kay Jewelers.  Doc. 21, p. 2; Doc. 25.  He explains that he recently saw a 2013 Rocky River Police Department Investigative Report

14

Supplement that, he claims, (1) identified the person who accompanied Brown to Kay Jewelers

as Ronald Marlan and (2) indicated that Ayers' registered phone number was not the phone

number that the state linked to Ayers at trial.  Doc. 21, p. 2.

Ayers' motion to supplement is, in essence, a motion to amend his petition to add claims

of actual innocence regarding Ground Two.[1]  Fed. R. Civ. P. 15 governs the amendment of

pleadings in civil cases and applies to federal habeas corpus proceedings.  *Mayle v. Felix*, 545

U.S. 644, 655 (2005).  Rule 15(a) permits a party to amend its pleading 21 days after service of a

responsive pleading or motion to dismiss, or by leave of court "freely give[n] ... when justice so

requires."  In determining whether to grant a motion to amend, the court considers factors

including "[u]ndue delay in filing, lack of notice by the opposing party, bad faith by the moving

party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the

opposing party, and futility of amendment."  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998)

(quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)).  A motion to amend is futile when

the proposed claim lacks merit on its face, i.e., if the amended pleading would not survive a

motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Brown v. Clipper*, 2016 WL 5173331, at

*19-20 (N.D.Ohio Sept. 21, 2016) (report and recommendation, adopted by the district court,

citing *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003), *Kottmyer v. Maas*, 436 F.3d 684,

691–692 (6th Cir. 2006)); *see also Wiedbrauk v. Lavigne*, 174 Fed. Appx. 993, at *1001-1002

(6th Cir. 2006) (motion for leave to amend denied as futile because proposed claims were

procedurally defaulted).

Ayers' arguments in support of his motion to amend fail.  His proposed amendment seeks

to show actual innocence for Ground Two.  That ground is procedurally defaulted, and his

amendment would be futile.  *See id*.  First, he does not provide a copy of the police report.  Thus,

---

[1]  Indeed, after his motion to supplement, Ayers filed an Amended Ground Two of Actual Innocence based on newly discovered evidence, referring to the phone number in the police report.  Doc. 23.

his claim is not supported with new, reliable evidence.  *Schlup*, 513 U.S. at 327.  Next, the fact

that the report purportedly lists Ayers' registered phone number (216-233-9057) as different than

the phone number linked to him at trial (216-336-0823) is neither new evidence nor proof of

actual innocence.  At trial, Ayers testified what his registered phone number was and stated that

his registered phone number was in the police officer's report.  Doc. 6-2, p. 405 (Ayers'

testimony at trial: "My number is 216-233-9057.  It's in the officer's report over there.  He knew

what my number was.  It's in his report, right there."); p. 406 ("My phone number is in that piece

of paper in the police report.").  See also Doc. 6-2, pp. 351-352 (testimony of Detective Witalis

referencing a December 2013 supplemental police report).  Moreover, Ayers' assertion that his

registered number was not the same as the phone number used to link him to the crimes is

immaterial because the phone used to link him to the crimes was a pre-paid "burner" phone, with

no accompanying registered name (Doc. 6-2, p. 313).  A person can have more than one cell

phone, as the prosecutor commented at trial (Doc. 6-2, p. 405).  In other words, the fact that the

phone number used to link Ayers to the crime was not Ayers' registered phone number is not

new evidence or evidence of actual innocence.

   Ayers' unsupported assertion that the police report lists a different man accompanying

Brown into Kay Jewelers also fails.  As above, Ayers does not provide the Court with the police

report.  The police report was referenced at trial and was not new evidence.[2]  Furthermore, the

evidence showed that Brown applied for store credit cards using a fake driver's license and that

the driver's license number on that fake license belonged to a customer of Ayers, whose car had

been seen at Ayers' business on numerous occasions by the police.  *Ayers*, 2017 WL 3084815, at

*1.  Ayers admitted that he traveled with Brown to stores over a four-day period while Brown

purchased merchandise at the stores using the fake credit cards.  *Id*. at * 2.  A telephone linked to

---

[2]  Ayers states that the report was not provided to him at trial.  Doc. 21, p. 2.  He does not state that the prosecutor
failed to turn over the report to his counsel.

Ayers was used on these days near the location of all the stores Brown bought merchandise at the

time Brown bought the merchandise, including Kay Jewelers.  *Id*.  Ayers was found to have

actively participated in the scheme with Brown.  *Id*.  Thus, even if Ayers did not accompany

Brown into Kay Jewelers, this is not evidence of actual innocence.  Accordingly, his motion for

leave to supplement his petition should be denied, and his subsequent filing, titled "Amended

Ground Two of Actual Innocence Based Newly Discovered Evidences" (Doc. 23) should be

stricken from the docket.

## VI. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Ayers' Petition (Doc. 1)

be **DISMISSED** because Ground One is not cognizable and Ground Two is procedurally

defaulted.  Ayers' Motion for Partial Summary Judgment (Doc. 5) and his Motion for Leave to

Supplement his Petition (Doc. 21) should be **DENIED**.  His Amended Petition (Doc. 23) should

be stricken from the docket.  His Motion to Compel the Production of Documents (Doc. 16) is

**DENIED**.


Dated: March 8, 2019                                    */s/ Kathleen B. Burke*

                                                       _____

                                                       Kathleen B. Burke
                                                       United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).